NOT RECOMMENDED FOR PUBLICATION
File Name: 12a0649n.06

No. 10-5374

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 19, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| DANNY LEE CATHEY, | ) | OPINION |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KEITH, GRIFFIN, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge**. Defendant-Appellant Danny Lee Cathey appeals his conviction following a jury trial for possession with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). Cathey contests the denial of his motion to suppress as well as the sufficiency of the evidence in support of his conviction. For the following reasons, we affirm the judgments of the district court.

## I. BACKGROUND

On October 14, 2008, Kentucky State Police Detective Brett Miller observed Cathey parked outside the Fulton County Courthouse in a silver four-door Hyundai. Miller recognized Cathey from previous criminal investigations and observed Cathey take a white towel from the Hyundai, open its trunk, and appear to be working on something inside the trunk. Miller observed Cathey looking in his direction several times. Cathey then appeared to manipulate something under the hood, closed

the hood, and went into the courthouse. Miller testified he thought it "seemed kind of odd" that Cathey was working in the trunk and under the hood of a car in the courthouse parking lot.

After Cathey left, Detective Miller checked Cathey's license plate. He was advised that the license plate was not issued to the Hyundai, but rather for a 1991, red two-door Dodge registered to Pat Evans. Miller then parked down the street and waited until Cathey returned to the car and drove away. As Miller watched, Cathey first stopped, but then drove into an intersection in a way that caused a vehicle with the right of way to make an evasive maneuver to avoid a collision. Miller testified he pulled in behind Cathey and stopped him for the improper license plate and for careless driving.

Detective Miller asked Cathey for his driver's license and proof of insurance but Cathey produced only his driver's license without proof of insurance or registration. Miller observed that Cathey appeared nervous and fidgety, was perspiring, and had slurred speech. Miller asked Cathey if he was under the influence of anything and told him to step out of the vehicle to perform a field sobriety test. Cathey advised that he had been injured in a motorcycle accident and had taken hydrocodone. Miller conducted a field sobriety assessment, somewhat limited due to Cathey's injury, but did not detect evidence of alcohol intoxication based on the eye test.

In the presence of two newly-arrived officers, Miller asked Cathey for consent to search the vehicle. Cathey told Miller that he "could look anywhere [Miller] wanted to and he didn't have anything to hide." The officers found nothing illegal in the passenger compartment of the Hyundai. Detective Miller then asked Cathey if he could look in the car's trunk. Cathey said "sure" and offered to open the trunk. In the trunk Miller found an open cardboard Mountain Dew twelve-pack

2

in which he saw two plastic baggies—one contained a white crystalline substance that appeared to be methamphetamine and the other contained a smaller amount of crystalline substance and three 100 mg blue Viagra pills labeled "Pfizer." Cathey denied any knowledge of the drugs in the trunk.

Miller searched Cathey and found $937 in cash, one Lortab, one and one-half Viagra tablets, and one tablet of Cialis. Miller then opened the car's hood and, in the engine compartment, found a black zippered bag that contained three bags of what appeared to be methamphetamine and $13,000 cash. Cathey said that he had no knowledge of the drugs under the hood. In addition to the drug offense, Miller cited Cathey for displaying improper registration and careless driving. Trial evidence established all the crystalline substance seized contained methamphetamine, with a total weight of 82.5 grams. A law enforcement expert testified that this amount was consistent with distribution and that the smaller plastic baggies found in the trunk had been divided into an eighth of an ounce (an "8-ball"), which is typical packaging for resale to end-users in drug trafficking.

Inconsistent evidence was given at trial with regard to Cathey's use and ownership of the silver Hyundai. Cathey presented witness testimony suggesting "Steve Crawford" owned the Hyundai and that Cathey had merely borrowed the vehicle. However, Crawford was not present and did not testify at trial. Testimony by ATF Agent Thielhorn also revealed conflicting statements by Cathey and the Hyundai's registered owner, Pat Evans, regarding the regular use of the vehicle.

Before trial, Cathey moved to suppress all evidence seized from the vehicle search on the basis that "[t]he warrantless stop and detention of the Defendant and motor vehicle were without probable cause, pretextual and unreasonable." After a hearing, the district court denied Cathey's suppression motion, finding probable cause to stop Cathey based on the discovery of improper

registration and Cathey's careless driving. The court noted that Cathey did not offer any evidence to contradict Miller's testimony that Cathey voluntarily consented to the search of the trunk. The district court also found that the search under the hood of the vehicle was lawful under the automobile exception because Miller had probable cause to conduct the search.

After trial, Cathey moved for judgment of acquittal, or in the alternative, for a new trial. The district court denied Cathey's motion, finding no error in its denial of Cathey's motion to suppress and finding sufficient evidence to support his conviction.

## II. DISCUSSION

### A. Motion to Suppress

#### 1. Standard of Review

In an appeal of the denial of a motion to suppress, this court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005). The determination of whether reasonable suspicion exists in order to support a detention beyond the initial traffic stop is a mixed question of law and fact that this court reviews de novo. *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008) (citing *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002)). "The evidence must be reviewed, however, 'in the light most likely to support the district court's decision.'" *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)).

#### 2. Search of the Hyundai

Cathey does not contest the district court's finding that Cathey voluntarily consented to the search of the passenger compartment and trunk of the Hyundai. Rather, Cathey contends that Miller "abandoned the prosecution of the traffic stop and embarked on another sustained course of investigation (the search for contraband) when he asked to search the trunk." Specifically, Cathey asserts this request to search the trunk and the search of the trunk itself "measurably extended the duration of this traffic stop," rendering the stop as a whole unreasonable. He submits that because the duration of the traffic stop for an improper tag was longer than necessary to effectuate the purpose of the stop, the fruits of the trunk search must be suppressed.

"A police officer may legally stop a car when he has probable cause to believe that a civil traffic violation has occurred." *Torres-Ramos*, 536 F.3d at 550 (citing *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007)). In this case, it is not contested that Miller had probable cause to stop Cathey for careless driving and operation of a motor vehicle displaying an improper license plate. "However, once the purpose of the traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Id.* at 550 (quoting *United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008)) (internal quotation marks omitted). Thus, in order to detain Cathey beyond the purpose of the original traffic violations, Miller must have had a reasonable and articulable suspicion that criminal activity was afoot. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). Otherwise, the continued detention constituted an illegal seizure of the vehicle's occupants. *See Terry v. Ohio*, 392 U.S. 1, 17-19 (1968).

Irrespective of whether the officers observe conditions raising reasonable and articulable suspicion that criminal activity is "afoot," they are entitled to ask for permission to search a vehicle. *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (en banc). "A law enforcement officer does not violate the Fourth Amendment merely by approaching an individual, even where there is no reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions. This includes a request for consent to search the individual's vehicle." *Id.* (citations omitted). Further, "this consent is not vitiated merely because the valid suspicion of wrongdoing for which an individual has been stopped proves to be unfounded or does not result in prosecution and the individual is free to go before being asked." *Id.* If, however, the officer no longer has reasonable suspicion of criminal activity and the detained individual is free to leave, should the officer reject the individual's indication that he would like to leave, valid consent could no longer be obtained and the fruits of the search must be suppressed. *Id.*

In this case, Detective Miller was investigating both careless driving and an improperly registered or possibly stolen license plate or vehicle. When Miller asked for consent to search, Cathey had not yet satisfactorily explained the ownership of the car or the wrongfully displayed license plate. Further, Cathey had also exhibited signs of impairment and admitted consuming hydrocodone. Regardless of whether the purpose for stopping the vehicle was complete at this point, from the totality of the circumstances, Miller had sufficient evidence to form a reasonable suspicion that criminal activity was afoot—specifically, driving under the influence. Finally, even if the truncated field sobriety assessment that Miller conducted had dispelled suspicion that Cathey was intoxicated, Miller was entitled to request consent to search the Hyundai. Cathey does not assert that

his consent was involuntary or that he indicated he would like to leave and Miller refused. Therefore, Miller's further detainment of Cathey was lawful and not in violation of the Fourth Amendment.

On appeal, Cathey only addresses the request by Miller to search the trunk and the actual search of the trunk, although he generally challenges the duration of the entire search. However, even if Cathey had directly challenged it, Miller's subsequent search of the engine compartment was lawful under the automobile exception to the warrant requirement. "[P]olice officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Lumpkin*, 159 F.3d at 986 (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)) (internal quotation marks omitted).

At the time Miller arrested Cathey for possession of methamphetamine, Miller had probable cause to search the Hyundai. Miller had observed Cathey appearing to work both inside the trunk and under the hood of the Hyundai in the courthouse parking lot and a search of the trunk had produced two baggies of suspected methamphetamine. Based on these facts, as well as Cathey's nervous behavior, Miller had probable cause to believe that the Hyundai contained further evidence of methamphetamine. "[W]here police have probable cause to believe that a vehicle contains contraband, they may search the entire vehicle and any containers located within it." *United States v. Mans*, 999 F.2d 966, 969 (6th Cir. 1993) (citing *California v. Acevedo*, 500 U.S. 565, 579-80

(1991)).  Detective Miller's search under the hood and of the black zippered bag found inside the

engine compartment was therefore lawful and not in violation of the Fourth Amendment.


**B.      Sufficiency of the Evidence**

Cathey asserts there was insufficient evidence for a rational trier of fact to have found the

essential elements of the charged crime beyond a reasonable doubt.  Cathey was charged with

possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(b).  In order

to be convicted of this offense, the Government must prove beyond a reasonable doubt that Cathey

(1) knowingly (2) possessed a controlled substance (3) with the intent to distribute.  *United States*

*v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006) (citing *United States v. Jackson*, 55 F.3d 1219, 1225

(6th Cir. 1995)).  Cathey asserts there was insufficient proof to find that he "knowingly possessed"

a controlled substance or that he had the intent to distribute a controlled substance.  We disagree.

**1.      Standard of Review**

On appeal, the standard of review for a sufficiency of the evidence challenge is "whether,

after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt."  *United States v.*

*Evans*, 883 F.2d 496, 501 (6th Cir. 1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))

(emphasis in original).  "[T]he Government must be given the benefit of all reasonable inferences

drawn from the evidence, including circumstantial evidence." *United States v. Davis*, 981 F.2d 906,

908 (6th Cir. 1992).

**2.      Knowing Possession**

The possession element of 21 U.S.C. § 841(b) can be satisfied by showing either actual or constructive possession. *United States v. Hunter*, 558 F.3d 495, 503-04 (6th Cir. 2009) (citing *United States v. Welch*, 97 F.3d 142, 150 (6th Cir. 1996)). "Actual possession exists when an individual knowingly has direct physical control over a thing at a given time, and constructive possession exists when a person does not have physical possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* at 504. Possession may be established through circumstantial evidence. *Welch*, 97 F.3d at 150 (citing *United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991)).

The district court gave the following instruction to the jury with regard to constructive possession:

> To establish constructive possession, the government must prove that the defendant knew that the methamphetamine was present in the vehicle and intended to exercise dominion over it or intended to exercise control over it, either directly or through other persons. Simple ownership or operation of the vehicle by the defendant is insufficient to prove that the defendant knew he had possession of the controlled substance. This is a factor you may consider; however, the government must prove that there is other evidence indicating the defendant's knowledge of the controlled substance.

This jury instruction is consistent with *United States v. Bailey*, which emphasizes that mere proximity is not sufficient to establish constructive possession. 553 F.3d 940, 945-46 (6th Cir. 2009).

In addition to proof that Cathey was operating the Hyundai, the jury was presented with evidence that Cathey had a large amount of cash ($937) in his pants pocket and that a larger amount of cash ($13,000) was discovered with the methamphetamine in the vehicle. Evidence was presented

at trial that the blue Viagra pills found in Cathey's pocket were identical to those found in one of the baggies with methamphetamine in the trunk. A short period of time had elapsed from when Miller observed Cathey looking inside the Hyundai's trunk and engine compartment and when the methamphetamine was discovered in both places. Miller testified that the presence of the bag with methamphetamine located under the hood was "obvious." Finally, the jury heard inconsistent testimony regarding the ownership and regular use of the Hyundai.

The sum of this evidence and reasonable inferences drawn therefrom in favor of the Government provided a sufficient basis for a rational factfinder to conclude beyond a reasonable doubt that Cathey possessed the methamphetamine, at least under a constructive possession theory. A jury could reasonably find that Cathey already knew of or became aware of the zippered bag of methamphetamine due to its "obvious" location under the hood or the baggies of methamphetamine in the trunk when he was observed looking inside both compartments. A jury could also reasonably conclude that the presence of identical Viagra pills both in one of the baggies and in Cathey's clothing evidenced an involvement with those baggies or at least knowledge of their presence. To the extent Cathey argues that the evidence is not sufficient in the face of his claim that he did not know of anything illegal in the car, this court does not assess the credibility of witnesses or substitute its judgment for that of the jury. *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (citing *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994)). The jury could have rationally disbelieved Cathey's exculpatory statements. Thus, the evidence presented at trial was sufficient to support the jury's finding that Cathey possessed the methamphetamine.

### 3. Intent to Distribute

The intent to distribute element of 21 U.S.C. § 841(b) can be shown by direct evidence or can be inferred from circumstantial evidence of the possession of large quantities of the drug. *United States v. Wettstain*, 618 F.3d 577, 585 (6th Cir. 2010) (citing *United States v. Young*, 243 F. App'x 105, 106 (6th Cir. 2007)). In this case, the methamphetamine found in the engine compartment was located with a large amount of cash. Cathey also had a large amount of cash in his pocket when he was arrested. Further, the amount of methamphetamine exceeded eighty-two grams and was packaged in smaller plastic baggies in the amount of an eighth of an ounce. At trial, the jury heard expert opinion testimony that both the amount of methamphetamine and the size of its packaging were consistent with distribution.

This court has found similar evidence to be sufficient to support a finding of intent to distribute a controlled substance. *See*, *e.g.*, *United States v. Bell*, 516 F.3d 432, 446 (6th Cir. 2008); *United States v. Peters*, 15 F.3d 540, 544-45 (6th Cir. 1994). Viewing all the evidence in the light most favorable to the Government, there was sufficient evidence to support a finding that Cathey had an intent to distribute the methamphetamine found in the Hyundai.

### III. CONCLUSION

For the foregoing reasons, the district court's denial of Cathey's Motion to Suppress and his Motion for Judgment of Acquittal, or in the Alternative, for a New Trial are **AFFIRMED**.