**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0225n.06
No. 19-5549

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** Apr 24, 2020 DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| ELOY ALONZO, | ) | TENNESSEE |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) |  |

BEFORE: BOGGS, GRIFFIN, and LARSEN, Circuit Judges.

PER CURIAM. Eloy Alonzo appeals his methamphetamine and firearm convictions and his 322-month sentence. As set forth below, we **AFFIRM**.

A federal grand jury returned an indictment charging Alonzo with conspiring to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; possessing with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A); and possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). Alonzo proceeded to trial, and the jury convicted him on all three counts.

Prior to sentencing, Alonzo filed a motion for a downward variance from the guidelines range, arguing that the sentencing disparity based on methamphetamine purity is unwarranted and creates an arbitrary distinction unrelated to a defendant's culpability. The district court calculated the guidelines range for Alonzo's methamphetamine offenses as 262 to 327 months of

imprisonment and denied his request for a variance from that range. After considering the sentencing factors under 18 U.S.C. § 3553(a), the district court sentenced Alonzo to 262 months as to the methamphetamine counts, to be served concurrently, and 60 months as to the firearm count, to be served consecutively, for a total of 322 months of imprisonment.

This timely appeal followed. Alonzo argues (1) that there was insufficient evidence to support his convictions[1] and (2) that the trial court erred in failing to grant a downward variance due to the sentencing disparity based on methamphetamine purity.

We review Alonzo's challenge to the sufficiency of the evidence de novo. *See United States v. Farrad*, 895 F.3d 859, 871 (6th Cir. 2018). In reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In making this determination . . . , we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). "Instead, we must draw all reasonable inferences, including inferences from circumstantial evidence, in favor of the government." *United States v. Acosta*, 924 F.3d 288, 296–97 (6th Cir. 2019).

Count One of the indictment charged Alonzo with conspiring to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

---

[1]In the table of contents and the argument heading of his brief, Alonzo asserts that his convictions were against the manifest weight of the evidence. However, Alonzo has forfeited this argument because he failed to develop it in the body of his brief. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006). Also, by failing to move for a new trial below on the basis that the verdict was against the weight of the evidence, Alonzo has forfeited this argument. *See United States v. Grubbs*, 506 F.3d 434, 443 (6th Cir. 2007).

"[A] conviction under § 846 requires an agreement to violate the drug laws, the defendant's knowledge of the agreement, and the defendant's decision to voluntarily join (or 'participate in') it." *United States v. Potter*, 927 F.3d 446, 453 (6th Cir.), *cert. denied*, 140 S. Ct. 436 (2019). "An agreement to violate the drug laws need not be express or formal." *United States v. Caver*, 470 F.3d 220, 233 (6th Cir. 2006). Rather, "[a] tacit or mutual understanding among the parties is sufficient." *Id.* (quoting *United States v. Forrest*, 17 F.3d 916, 918 (6th Cir. 1994)). "[A] defendant's knowledge of and participation in a conspiracy may be inferred from his conduct and established by circumstantial evidence." *Martinez*, 430 F.3d at 330.

The evidence at trial established that Alonzo, also known as "Chino," sold methamphetamine at his trailers and barn in the Mashburn Trailer Park. Alonzo argues that his conspiracy conviction was based on witness testimony about buyer-seller transactions, which are "insufficient to tie a buyer to a conspiracy because 'mere sales do not prove the existence of the agreement that must exist for there to be a conspiracy.'" *United States v. Deitz*, 577 F.3d 672, 680 (6th Cir. 2009) (quoting *United States v. Cole*, 59 F. App'x 696, 699 (6th Cir. 2003)). Alisia Torres and Ciara Winckler testified that they purchased distribution-level quantities of methamphetamine (an "eight ball" or more) from Alonzo every other day or every day for several months. "[A] conspiracy can be inferred from repeated purchases of large quantities of drugs . . . ." *United States v. Sills*, 662 F.3d 415, 417 (6th Cir. 2011); *see United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003) ("[E]vidence of repeat purchases provides evidence of more than a mere buyer-seller relationship.").

In addition, Brian Broyles testified that he saw John Jimenez and Gary Lish obtain methamphetamine from Alonzo and then sell the methamphetamine to others. Broyles also testified that, during a controlled buy at the Mashburn Trailer Park, he told Abel Cruz Sanchez

what he wanted and saw Sanchez go into the barn with Alonzo. When they came out of the barn, Alonzo waved at Broyles and pointed at Sanchez, who then delivered the methamphetamine to Broyles. Alonzo argues that Broyles's testimony cannot be considered because he acted as a confidential informant for the government. Although "proof of an agreement between a defendant and a government agent or informer will not support a conspiracy conviction," *United States v. Pennell*, 737 F.2d 521, 536 (6th Cir. 1984), Broyles's testimony may be considered to establish an agreement between Alonzo and other conspirators, *see United States v. Hayden*, 68 F. App'x 530, 532 (6th Cir. 2003) (per curiam). Based on Broyles's testimony and the other evidence presented at trial, a rational trier of fact could have found that Alonzo conspired to distribute 50 grams or more of methamphetamine.

Count Two charged that, on or about September 30, 2016, Alonzo possessed with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). Count Three charged that, on or about September 30, 2016, Alonzo possessed a firearm in furtherance of the drug-trafficking crime set forth in Count Two, in violation of 18 U.S.C. § 924(c). Alonzo argues that there was insufficient evidence that he distributed methamphetamine on September 30, 2016, and that both counts therefore fail. But Alonzo was not charged with distributing methamphetamine on that date—he was charged with *possessing* methamphetamine with intent to distribute.

"To demonstrate possession with the intent to distribute a controlled substance under § 841(a)(1), the government must prove, beyond a reasonable doubt, that: (1) the defendant[] knowingly, (2) possessed a controlled substance, (3) with the intent to distribute." *United States v. Wettstain*, 618 F.3d 577, 585 (6th Cir. 2010). Possession may be actual or constructive, with constructive possession existing "when a person does not have actual possession but instead

knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). And "[a] jury may infer that a defendant had the intent to distribute drugs from circumstantial evidence of the possession of large quantities of drugs." *Wettstain*, 618 F.3d at 585 (alteration in original) (quoting *United States v. Young*, 243 F. App'x 105, 106 (6th Cir. 2007)).

Jamie Paul, one of Alonzo's girlfriends, testified that Alonzo paid for the trailer at 324 Mashburn and that she had been living there with Alonzo and her children for the two weeks prior to the search by law enforcement. During the search of 324 Mashburn on September 30, 2016, law enforcement found approximately four pounds of methamphetamine concealed underneath a bathtub in the master bathroom. That same day, law enforcement found approximately ten ounces of methamphetamine in a Tupperware container concealed in a toilet at 410 Mashburn, another trailer owned by Alonzo. Jesus Jaramillo, who was living at 410 Mashburn, testified that Alonzo brought him the Tupperware container of methamphetamine the morning of the search. There was ample evidence presented at trial to support Alonzo's conviction for possession with intent to distribute 50 or more grams of methamphetamine.

"To convict a defendant of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), the government must show 'a specific nexus between the gun and the crime charged,' such as using the gun 'to promote or facilitate the crime.'" *United States v. Steele*, 919 F.3d 965, 970 (6th Cir. 2019) (quoting *United States v. Mackey*, 265 F.3d 457, 461–62 (6th Cir. 2001)). "Although possession of a firearm in the same premises as the drug trafficking activities alone is insufficient to support a conviction under section 924(c), a jury can reasonably infer that firearms which are strategically located so as 'to provide defense or deterrence in

furtherance of the drug trafficking' are used in furtherance of a drug trafficking crime." *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004) (quoting *Mackey*, 265 F.3d at 462–63).

During the search of 324 Mashburn, law enforcement found a fully loaded SKS rifle with "Chino" written on the stock. The rifle was strategically located, leaning against the wall in a bathroom near the entrance of the trailer. In addition to the rifle and the four pounds of methamphetamine hidden under the bathtub in another bathroom, the search of 324 Mashburn uncovered a handgun, boxes of ammunition, two sets of digital scales, a drug ledger, and a surveillance system. Based on the evidence presented at trial, a rational trier of fact could find that Alonzo possessed the rifle to promote or facilitate his drug-trafficking offense—that is, to protect his drugs and drug-trafficking business.

Alonzo argues that his sentence was procedurally and substantively unreasonable because the district court relied on an arbitrary distinction in the sentencing guidelines between pure or "actual" methamphetamine and less pure mixtures containing methamphetamine, asserting that this distinction creates a sentencing disparity unrelated to a defendant's culpability. The government asks that we review the procedural reasonableness claim for plain error. Alonzo asks for abuse-of-discretion review. Even under the more deferential standard, Alonzo's claim fails.

In support of his argument, Alonzo relies on *United States v. Rodriguez*, 382 F. Supp. 3d 892 (D. Alaska 2019), in which the district court disagreed with the sentencing guidelines' distinction between actual methamphetamine and mixtures containing methamphetamine on policy grounds. "[T]he fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011). Here, the district court considered Alonzo's

argument and denied his motion for a downward variance, finding that the distinction based on purity level is warranted because actual methamphetamine is substantially more addictive. In doing so, the district court expressly recognized the advisory nature of the sentencing guidelines and its discretion to vary from the guidelines range. *See United States v. Kamper*, 748 F.3d 728, 742 (6th Cir. 2014) ("A district court errs when it 'fail[s] to appreciate the scope of its discretion' and 'indicates that policy disagreements are not a proper basis to vary.'" (alteration in original) (quoting *United States v. Johnson*, 407 F. App'x 8, 10 (6th Cir. 2010))). Alonzo has failed to establish that the district court procedurally erred in rejecting his policy-based argument and denying his motion for a downward variance.[2]

"The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). A claim of substantive unreasonableness is "a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir.), *cert. denied*, 139 S. Ct. 264 (2018). We apply a rebuttable presumption of substantive reasonableness to Alonzo's within-guidelines sentence. *See United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Alonzo has not overcome that presumption. The district court considered Alonzo's argument in support of a downward variance as well as the relevant § 3553(a) factors and imposed a reasonable sentence at the bottom end of the guidelines range.

For these reasons, we **AFFIRM** Alonzo's convictions and sentence.

---

[2]Alonzo asserts in his brief that unrecovered and untested quantities of methamphetamine were used to determine his base offense level. At sentencing, however, the district court sustained Alonzo's objection to the presentence report and determined his base offense level based on the quantities of methamphetamine actually recovered and tested.